[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff married Eileen M. Kelleher on November 6, 1982 in Poughkeepsie, New York. The parties have lived in the State of Connecticut for twelve (12) years, and have three (3) children, all issue of the marriage. They are Kristine, born September 5, 1983, Daniel, born June 17, 1986, Jeffrey, born April 7, 1989. No public agency has ever been required to assist in the support of this family. CT Page 5284-IIIII
The plaintiff expressed that he was unhappy with the marriage, and that the parties "grew apart." He testified that they did not really argue, but that she ultimately agreed that they should separate and he moved from the family home. He lives in a small apartment which is not optimal for the overnight visits of the children, so they are limited.
The plaintiff is currently working in an architectural capacity for Union Carbide. He continues to be the major wage earner for the family. The defendant has worked part-time in a variety of occupations, as a dance instructor, substitute teacher, and doing office work. The plaintiff is a graduate of a five year architectural program at the Rhode Island School of Design.
The plaintiff has earned additional income working for Visual Access, a computer software company. That income was earned in 1995, and was limited to that year. The plaintiff claims that he has little expectation that that work could turn into something larger.
When the parties separated in August of 1994, the plaintiff continued to deposit his paycheck automatically into their joint checking account. That was stopped in early 1995, when he paid family support directly. He paid some additional bills, insurance for cars and home, some smaller bills, but essentially contributed Two Thousand ($2,000.00) Dollars per month for the family. He covers the children and wife on his medical insurance, and has contributed to unreimbursed health-related expenses for the children, including orthodontia for one of the children.
He has paid expenses on a credit card for restaurants and a vacation last year. He purchased the Christmas gifts for the children, and has expenses for visits. The deduction for repayment of a loan against his savings is a mandatory deduction pursuant to his employment contract.
His life insurance policy is automatically from the parties joint checking account. That is reflected in the financial affidavit. He also has another One Hundred, Twenty-eight ($128,000.00) Dollar policy through his employment which is conditioned upon his employment with Union Carbide. His private policy has a face amount of One Hundred, Fifty ($150,000.00) Dollars, and has a cash value as of the financial affidavit date, CT Page 5284-JJJJJ in the amount of Eleven Thousand ($11,000.00) Dollars.
He claimed that he occupies a small apartment because he wanted his wife and children to stay in the marital home. He thought that that would be better for the children. He continues to believe that but will not stop her from making a decision concerning the sale of the property. Her current claims for relief seek a sale of the marital home and the division of the proceeds.
He was hired in 1982 by Union Carbide as an Engineer, promoted to Manager of Engineering and Architectural Services. He earns a gross in excess of Sixty-six Thousand ($66,000.00) Dollars. When he started he earned in the "upper thirties." He has been upwardly mobile within the company, up until the last couple of years, when he was not considered for his boss' job, after his boss separated from the company. He receives other benefits, such as a portion of the medical benefits, a 401K plan, an ESOP. He is vested in the company's pension plan. The defendant introduced Exhibit 1 to demonstrate values.
In one calendar year he earned over Seventy-seven Thousand ($77,000.00) Dollars and of that he contributed approximately Twenty-five Thousand ($25,000.00) Dollars to family support. He continued his claim that he needed Eleven Thousand ($11,000.00) Dollars to pay family bills and expenses in addition thereto. No evidence was produced as to the nature of those bills or when and to what extent the bills were paid. He received a bonus for 1995 in February of 1996, in the gross amount of Ten Thousand ($10,000.00) Dollars and a net amount of Five Thousand, Nine Hundred, Fifty-three ($5,953.00) Dollars. He did not know why there was such a large deduction from that amount.
The plaintiff proposes that the defendant wife retain the marital home, and that he retain the other major assets, which are liquid. The home has an accumulated capital gain which thereafter would be the responsibility of the defendant. She does not ask the court for the home, but rather requests that the property be sold and a distribution occur with the defendant receiving sixty (60%) percent of the equity.
The defendant is 38 and was raised in Poughkeepsie, New York. She attended local parochial and public schools, and SUNY Purchase. She was a dance major and received a B.F.A. when she graduated. Only thirty of her credits were in academics, and she CT Page 5284-KKKKK has had not business training.
She testified that her health was good, but that she had had some problems in the past.
She met her husband at United Engineers, when she worked as a receptionist, in approximately 1981. She was still taking dance classes, and working. He was also working for that company as a draftsman. They met after work or went out to lunch, and their romance began. He was married at that time, and he was living at his then home when they were dating. He ultimately divorced, and they became engaged. They were married on November 6, 1982, when he was working at Union Carbide. She was involved with a regional dance company in Poughkeepsie where she earned $25.00 per performance. She also may have been teaching a class, for which she earned $15.00.
At the time of the marriage, she had a savings account in the approximate amount of Four Thousand ($4,000.00) Dollars, which they used to purchase bedroom furniture. The plaintiff had a house, a small two bedroom Cape. They resided there at the time of their marriage. Both parties had a car, and the plaintiff had some furniture in the home.
The parties sold that home in 1985, one year prior to Daniel's birth. That home, in Hyde Park, New York, sold for Sixty-five Thousand ($65,000.00) Dollars, and any proceeds were put into their home in Gaylordsville. That home was sold for One Hundred, Forty-five Thousand ($145,000) Dollars, which proceeds were reinvested into the current family home at 21 Maplewood Drive, New Milford. That home is in a nice neighborhood and has four bedrooms, two and one-half baths, 1.9 acres.
The couple wanted to have a family, according to the defendant, and Kristine was born. Daniel followed after the couple moved to Connecticut. Then Geoffrey was born in 1989. The defendant occasionally taught dance, and did summer projects with the "Dramalites" in Washington. She earned Two Hundred ($200.00) Dollars for those projects. She taught in a private school for a school year and earned Four Thousand ($4,000.00) Dollars. She has earned some monies for choreographing.
She characterized herself as a full-time stay at home mother. She cared for the inside of the home, carpooled, and did volunteer work within the classroom. She was involved in PTO, and CT Page 5284-LLLLL felt it very important that she could be involved in the children's school experience. She taught CCD classes through their church. She is involved in the spiritual education of the children. The plaintiff accompanied the family to church prior to their separation.
She testified that she attended work-related events with her husband. She characterized their early years as having many "dynamics." She testified that it was reasonably satisfactory, but that they were only married for ten months before their first child was born. She felt that that contributed to the difficulties because she was not able to give him the attention he might have demanded. She had to fulfill her mothering duties, and her committment to the children interfered with their social life. She claimed that their marriage became more family-focused. She claimed that at some point there was a breakdown in communication, and needs were not met for both of them. They did argue somewhat, and she claimed he expressed anger and impatience, which was consistent over the years. She claimed that he was critical of her.
From the early 1990's, the marriage was filled with anger, impatience, and the parties ceased talking about certain issues, as to intimate issues. He told her he did not love her, that he did not want to be married to her, and that everything was her fault. Initially, her physical and mental health were affected. She developed an eating disorder. She was taking care of the children full-time, but experienced high anxiety, and could not eat. She suffered a nervous breakdown, and went to the crisis center at Danbury Hospital. She was given medication. She feels that her mental health is good. Stress is part of her life as a single parent of three children.
The plaintiff left the family home in August of 1994, and commenced this action in December of that year. She claimed that the family, and all of its members individually suffered confusion during that period. She claimed that she was desperately trying to hold their marriage together. She started counseling on her own. He went after he moved out of the house after much pressure from her to do that. He attended two or three times. Prior to his departure from the home, he was drinking and taking medications. She felt that he was not sure what he was doing. The children and parents were functioning the best that they could. They told the children that plaintiff was moving out of the home approximately one week prior to his departure. They CT Page 5284-MMMMM were hurt and angry. Currently, they are handling their lives well, and have continued to do well in school.
The defendant does not believe that the marriage has irretrievably broken down. She feels that if they could both have worked on a reconciliation process, their divorce would not be inevitable.
The defendant currently is working as a teacher's aide for disabled students in the Sherman school system, which job is not secure, and has already resulted in one layoff. It is described by the defendant as important to her as she makes the transition from stay at home mom to working mom. She is available for the children because of this employment. Because of her limitations in education and skills, she hopes that by the time their youngest child is in intermediate school, she would like to complete her education to become certified as a teacher. She contemplates that that would take her five to six years of part-time school.
The value of the family home was done by a market analysis by a realtor which is more current than that value relied upon by the plaintiff. She drives the Plymouth Acclaim, which she claims needs a new transmission and new tires. It has in excess of One Hundred Thousand miles.
The defendant and the plaintiff share bank accounts which are used to pay the household bills. She has a life insurance policy with a face amount of Twenty-five Thousand ($25,000.00) Dollars, with a cash value of Two Thousand, One Hundred ($2,100.00) Dollars. She could not recall who the beneficiary was on that policy, but indicated it was for the children.
The defendant testified that if there were a problem with visitation, and that it was her problem that the children did not spend enough time with him.
The defendant was cross-examined on her paltry income, and as to her inactivity with dance. She has not applied for any other work, on weekends or evenings. She agreed that while the plaintiff had initially deposited all of his pay check into their joint account for the payment of bills, he nows contributes between Two Thousand ($2,000.00) Dollars and Two Thousand. Two Hundred ($2,200.00) Dollars per month for family support. He pays the auto insurance and homeowners insurance, along with certain CT Page 5284-NNNNN credit card expenses.
She agreed that she had some jewelry of value, but said that it was personal to her, and that she did not attach a monetary value to it, but might be inclined to use it as an asset for a bank loan. The value was around Three Thousand ($3,000.00) Dollars.
The court has had an opportunity to review the evidence, the exhibits, and the proposed orders filed by each party and reviewed that evidence in conjunction with the relevant statutory criteria in Conn. Gen. Stat. Sec. 46b-81 et seq. The court observes preliminary that there does not appear to be serious pathology between the parties, and both were seriously limited in their ability to articulate what brought them to this place. The court was especially concerned about the plaintiff's ability to have insight into his responsibilities. While, the defendant agreed that they had been unhappy, the plaintiff was unable to point to any serious conduct which occasioned his falling out with the defendant. The court need not remind the parties that they have three children to whom they owe a responsibility. That responsibility, for a period of time, must continue to be their very first priority. The court finds that it is appropriate for this father to live in a small apartment until the family home is sold, and he can elect to use his proceeds to acquire more suitable housing. He made a decision to leave his family home, and under these circumstances, will continue to be relied upon by this family for most of their support.
The plaintiff is more valuably educated, and has consistently pursued his career in the work force while the defendant has utilized her educational skills to better the lives of their three most important "investments in the future" — their children. The defendant does not have the ability to earn at the plaintiff's rate, nor will she have the ability in the future to acquire assets. She has already demonstrated that stress can compromise her physical and emotional health, and that health is essential for the upkeep of the family unit. While she has some significant potential in the outside world, the parties appeared to have made a decision that her role as nurturer and caregiver would best suit this family. To ask her now, in the midst of that task to abandon it and go get a full-time job, is tantamount to changing the rules in the middle of the game. Their children seem to be the beneficiaries of their decision to allow the defendant to stay at home and deal with the demands of childrearing. The CT Page 5284-OOOOO court cannot say that it would be in the best interests of the children, at this stage of their lives, to insist that they change their expectations so that dad can get a bigger apartment. The court does not feel that they will be ill served spending time with dad, even overnights, in his smaller quarters, as long as he does not make a victim of himself, and make them feel guilty that their lives are not expected to change as much as his. After all, it was he who decided that his life at home was unbearable.
Based upon the court's review of the statutory criteria, the evidence, the exhibits, and the demeanor of the witnesses at trial, the court makes the following orders with respect to the issues of this marriage:
1. CUSTODY. The parents have agreed to share joint custody of the minor children, who will live primarily with their mother, and spend flexible, liberal, and reasonable time with their father as they all agree. The court orders that the parties institute overnight visits as soon as possible if they have not already done so. The parties will share holidays, and spend some time with each child on that child's birthday, and on the parents' birthdays. The parties shall each be able to take the children on an extended vacation for up to two weeks at a time. They shall form a plan for summer vacations by May 15 of each year. The children shall spend Father's Day with their father, and Mother's Day with their mother. The defendant shall notify the plaintiff immediately of any change of address of the family, and disclose the telephone number, and she shall give plaintiff at least ninety (90) days notice of an intention to move out of the State of Connecticut with the children. The parties are ordered to complete the Parenting Education Program within sixty (60) days of this judgment.
2. CHILD SUPPORT. The parties have agreed that the plaintiff shall pay child support in the amount of Three Hundred, Forty-two ($342.00) Dollars per week in conformity with the Uniform Support Guidelines. The child support shall be paid by contingent wage execution, and be payable directly between the parties. Child support shall be recomputed upon a change of circumstances, or upon a child reaching the age of majority in conformity with the Guidelines. Child support shall be paid for the maximum statutory period.
3. MEDICAL/DENTAL/HEALTH INSURANCE. The plaintiff shall CT Page 5284-PPPPP continue to cover the children on his current medical/dental policy through his employment. The plaintiff has had a history of being employed in a capacity where benefits are part of his employment package, and should continue to be so employed. The responsibility of having coverage, therfore, shall be his. If the family can be covered for these expenses better or more cost-effectively through a policy available to the defendant at a later date, then the plaintiff shall pay the cost of covering the children on that policy. The parties should always endeavor to use the best coverage for the best price as their children move into their adolescent, and hopefully, into college. The parties shall share the cost of any unreimbursed health-related expense, including, but not limited to medical, dental, pharmicological, orthodontia, optometric, psychiatric or psychological expenses. The plaintiff shall cooperate with the defendant if she elects to continue her COBRA coverage. The parties shall confer about elective surgery or orthodontia, and shall not unreasonably withhold consent to a procedure which is in the childrens' health best interest. The parents shall be mindful of the self-esteem issues for a child, when deciding about cosmetic improvement, especially orthodontia.
The provisions of Conn. Gen. Stat. Sec. 46b-84 (d) shall apply.
4. LIFE INSURANCE. The parties shall maintain, in full force and effect, their current life insurance policies, naming each other as beneficiaries in trust for the minor children. Such designation shall be irrevocable.
5. MARITAL HOME. The marital home shall be placed on the market for sale, with a broker who is selected by the defendant. The listing price shall be at the recommendation of the broker with the consent of the parties, which shall not be unreasonably withheld. If the house does not sell within three (3) months at the listing price, and there is a recommendation to decrease the listing price, the parties shall again confer. If there is disagreement, the parties may select another broker, or each retain their own to work with the original broker. The three brokers will resolve the issue of listing price. The parties shall accept any good faith offer without serious contingency within ten (10%) percent of the listing price. The proceeds of the sale, after the payment of ususal and ordinary expenses of the sale, shall be divided sixty (60%) percent to the defendant and forty (40%) percent to the plaintiff. CT Page 5284-QQQQQ
6. BANK ACCOUNTS, 401K, LIFE INSURANCE CASH VALUE. The parties shall divide the bank accounts, 401K and cash value of the life insurance policies equally.
7. PENSION. The plaintiff shall transfer to the defendant one-half of the value of his pension with Union Carbide by way of a Qualified Domestic Relations Order.
8. DEBTS. The plaintiff shall pay all family debts to the date of judgment, including the debt listed on his financial affidavit against his pension.
9. ALIMONY. The plaintiff shall pay the sum of One Hundred ($100.00) Dollars per week alimony to the defendant for a period of ten (10) years.
10. PERSONAL PROPERTY AND AUTOMOBILES. The parties shall retain the automobiles which they are currently operating, and shall retain all property in their possession, except for the items of personality requested in the plaintiff's proposed orders. The camcorder will be retained by the children, and may be utilized by either parent within reasonable request. The camcorder will be retained by the defendant, but will not be her exclusive property.
11. ATTORNEYS' FEES. The parties shall be responsible for their respective attorneys' fees.
The plaintiff has testified that the marriage has broken down irretrievably. The defendant did not agree. Based upon current case law, the court will enter a decree dissolving the marriage on the grounds of irretrievable breakdown.
Judgment shall enter in accordance with this opinion.
DRANGINIS, J.